### *In re* EKINGS, Bankrupt.

*(District Court, D. New Jersey.   February 23, 1881.)*

1. BANKRUPTCY—PROOFS OF DEBT—DISCHARGE—ACT OF JUNE 22, 1874,
    § 9.
       Proofs of debt, filed with the register after the application of the
    bankrupt for his discharge, should be counted, under the provisions
    of section 9 of the amendment of June 22, 1874, in ascertaining the
    assent of one-third in number and one-fourth in value of the bank-
    rupt's creditors.

2. SAME—PECUNIARY CONSIDERATION—DISCHARGE.
       A promise by a bankrupt to pay his creditor "all he ever owed him
    when he got able," upon condition that he would assent to his dis-
    charge, constitutes a pecuniary consideration or obligation sufficient
    to defeat the right of the bankrupt to a discharge.

3. CONTRACT—CONSIDERATION—MORAL OBLIGATION.
       A moral obligation to pay a debt constitutes a sufficient considera-
    tion to support a parol promise at common law.—[ED.

Specifications against Discharge.

*Thomas D. Hoxsey*, for bankrupt.

*H. A. Williams*, for creditors.

NIXON, D. J.   Various specifications are filed against the
discharge of the bankrupt, but when explained they all seem
to revolve around the methods resorted to, and the expedients
adopted by his attorney to procure the requisite one-fourth of
his creditors in number, and one-third in value, to consent to
the discharge.   The application for the discharge was filed
June 17, 1879, and the order upon the creditors to show
cause why the same should not be granted was returnable on
the twenty-second of July following.   On the day before the
return of the same, to-wit, on the twenty-first of July, four
new proofs of claim were made and filed with the register:
(1) One by John C. G. Robertson, who had already put in a
proof for upwards of $1,200, and who now proved an addi-
tional claim for $300, consisting of two promissory notes and
a check, which had been procured without consideration from
some faithless creditors, who had not deemed them worth the
expense of proving; (2) one by Joseph Parker, the father-in-
law of the bankrupt, and who paid one Thomas Beverage $25

for a claim of $207, and proved for the whole amount; (3) one by James M. Smylie, who had before made proof of a claim for $277, and who had afterwards surrendered to the assignee a mortgage which he held against some real estate of the bankrupt to secure the payment of a bond for $1,100, and had proved the bond as an unsecured debt; (4) one by Francis Ekings, the brother of the bankrupt, who proved a claim of about $600, which did not appear in the schedules of the bankrupt, and which had been barred by the statute of limitations for a long number of years.

It was conceded upon the argument that all these creditors made their proofs before the hearing, on the application for discharge, for the sole purpose of aiding the bankrupt in obtaining his discharge by filing consents thereto.

Two questions are presented—*First*, whether proofs of debt, filed with the register after the application of the bankrupt for his discharge, are to be counted, under the provisions of section 9 of the amendment of June 22, 1874, in ascertaining the assent of one-third in number of creditors and one-fourth in value; *second*, whether the testimony shows that the bankrupt has violated the eighth clause of section 5110 of the Revised Statutes, which prohibits a discharge "if the bankrupt, or any person in his behalf, has procured the assent of any creditor, or influenced the action of any creditor, at any stage of the proceedings, by any pecuniary consideration or obligation."

1. The original section of the bankrupt act, (section 5112 of the Revised Statutes,) to which the ninth section of the amendment of June 22, 1874, was a supplement, required that the assent in writing of a majority in number and value of the creditors should be filed in the case at or before the time of hearing of the application for discharge. All proofs of debt, therefore, that were made before the time of hearing, could be used as foundations for assents filed at the hearing. The supplement is less exacting, and was passed to facilitate the opportunities for a discharge. It does not require the assent to be in writing, nor to be filed anywhere, nor at any specified time. It simply reduces the required number

of assenting creditors from a majority to one-fourth in number and one-third in value. My attention has not been called to any provisions of the bankrupt act which require proofs of debt to be made within any particular time while the bankruptcy proceedings are pending. The only penalty upon creditors for neglecting to prove is that they can have no vote in the choice of an assignee, nor participate in any dividend declared before the proof is put in, nor act in the allowance or disallowance of claims of other parties, nor in the question of the discharge of the bankrupt. Under these circumstances, I am of the opinion that there is nothing in the amendment of June 22, 1874, either in its expressions or omissions to express, which should be interpreted as taking away the right of creditors to file proofs of claims and assent to the discharge at any time up to the day of hearing.

2. The next question is whether the bankrupt, or any person in his behalf, has influenced the action of any of the creditors named in the specifications by any pecuniary consideration or obligation. They have, doubtless, been greatly influenced in their conduct by the bankrupt and his attorney. They have been persuaded to surrender securities, and to purchase debts and claims against the estate which otherwise would not have been proved, in order that they might sign the consent to the bankrupt's discharge. They have been induced to perform these acts—one, at least, by family connections and relationships, and others by their feelings of friendship for the bankrupt. When done from such motives only they are allowable. The law does not find fault with the bankrupt for asking his friends and relatives to aid him in obtaining his discharge, nor does it prohibit them, on such solicitation, from proving honest debts against the estate, when there is no expectation of a dividend, for the purpose of enabling them to sign the necessary consent thereto. To make such acts unlawful they must be the result of *pecuniary consideration or obligation.*

What evidence is there that any of the creditors have been thus influenced? The nearest to it that I can discover is the case of Robertson, one of the creditors, who had proved a

debt for $1,255.40 before the application for discharge was made, and who afterwards, obtaining notes and checks of the bankrupt for about $300, without paying any consideration therefor, proved them on the day before the hearing, and filed a new consent for the discharge. According to his testimony in chief he was moved to do this upon the distinct verbal promise of the bankrupt (1) that he would pay him all that he ever owed him when he got able, and (2) because the bankrupt, in consideration of the creditor aiding him to procure his discharge, acknowledged the existence of a hitherto unacknowledged debt for borrowed money, and promised that he would see it right. It is true that the witness, on his cross-examination by the bankrupt's attorney, gave a broad, naked denial that any such promises were made, but he does not explain why he had asserted these facts on his principal examination, and all the circumstances of the transaction indicate that his first statements were true. He was a personal friend of the bankrupt, and I can find stronger reasons for his denial of the promise after he was led to understand that it would operate injuriously on the question of discharge, than I can find for his original testimony, if it had no existence in fact. Whether such inducements, held out by the bankrupt to the creditor, constitute a *pecuniary consideration or obligation*, depend upon the question whether the creditor can enforce the payment of his claims against the bankrupt under such promises.

I will dismiss from consideration the promise secondly above stated, where the bankrupt acknowledged the debt for borrowed money, and said "he would see it right." I think such an expression is too vague to revive a debt which has been discharged. The supreme court, in *Allen* v. *Ferguson*, 18 Wall. 3, held that the promise by which a discharged debt is revived must be clear and distinct. In that case, after the debtor had applied for the benefit of the bankrupt act, and while the proceedings were still pending, he wrote to one of his creditors: "Be satisfied; all will be right. I intend to pay all my just debts, if money can be made out of hired labor." And in a postscript he added: "All will be

right between me and my just creditors." The court, speaking by Mr. Justice Hunt, said that the debt, having been discharged by the discharge of the debtor, was not renewed by such expressions; that the law required an absolute or conditional promise to pay; but, in either case, it must be unequivocal.

The other promise of the bankrupt is unequivocal, although conditional. The creditor was asked: *Question 270.* "Did he (the bankrupt) say how he would manifest his gratitude for it?" (*i. e.,* for proving the debt and giving the consent.) *Answer.* "By paying me all he ever owed me when he got able." Such a condititional promise has always been held to be binding when proof is made of the ability of the bankrupt to pay. *Freeman* v. *Fenton,* Cow. 544; *Besford* v. *Sanders,* 2 H. Black. 116; *Fleming* v. *Hayne,* 1 Star. 370; *Sconton* v. *Eislord,* 7 John. 36; *Maxim* v. *Morse,* 8 Mass. 127; *Corliss* v. *Sheppard,* 28 Me. 550; *Kingston* v. *Wharton,* 2 S. & R. 208; James on Bank. 146.

*Kingston* v. *Wharton, supra,* was quite like the case under consideration. The plaintiff in the suit was an indorser upon the note of the bankrupt. On the twenty-ninth of December, 1800, the debtor wrote to him asking him to take up the note at maturity, and declaring, "The moment I am able to relieve you, I will." The note fell due February 13, 1801, was protested and paid by the plaintiff. A commission of bankruptcy was issued against the defendant March 16, 1801, under which he was declared a bankrupt, and on the twenty-sixth of May, following, he obtained his discharge. The action was founded upon a promise to pay when the debtor should be able. The letter was treated by the court as a promise made by the debtor to induce the creditor not to oppose his discharge, and such promise was held to be good. The debt, notwithstanding the discharge, remained due in conscience. The moral obligation to pay still existed, and was a sufficient consideration to support the promise. Stress was laid upon the fact that in England it required an act of parliament (5 Geo. II, *c.* 30, § 11,) to avoid a promise by the bankrupt to pay a debt which otherwise would have been discharged

in consideration of the creditors consenting to a discharge. And it may be added that the same provision was re-enacted in the English bankruptcy act of 1861, (24 & 25 Vict. *c.* 124, § 166;) but I do not find it in the English act of 1869, and hence infer that such a promise would now be reckoned valid and binding there, except so far as it might be affected by the statute of 6 Geo. IV. *c.* 16, which requires the bankrupt's promise to pay a debt dischargeable in bankruptcy proceedings to be in writing, and signed by him or by some one by him lawfully authorized. A similar law was enacted in New Jersey a few years since requiring every promise of the bankrupt to pay any debt or demand, from which he had been released by bankruptcy, to be put in writing, and signed by the party to be charged therewith. But it does not seem to apply to the present case, as it is limited in terms to promises *made after the discharge.* Rev. St. N. J., "Frauds and Perjuries," § 8. The promise here was made pending the bankruptcy proceedings, and before the discharge was granted.

The case under consideration, therefore, must be decided, according to the principle of the common law, which declares that the moral obligation to pay the debt is a sufficient consideration to support a parol promise. *May* v. *Sperry*, 6 Cush. 240.

Under the evidence and the law, the bankrupt is not entitled to his discharge, and the same is refused.